**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ANGEL VEGA,**
                 **Petitioner,**                **5:06-CV-0189 (NAM)**
    **vs.**                                                 **Related Criminal Matter:**
                                                             **5:03-CR-0228**

**UNITED STATES OF AMERICA**,

                 **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

APPEARANCES:                                   OF COUNSEL:

**Last Known Address:**

Angel Vega
12077-052
USP Canaan
P.O. Box 300
Waymart, PA 1847
Petitioner, *pro se*

Office of the United States Attorney        John M. Katko, Esq.
P.O. Box 7198                                        Assistant U.S. Attorney
100 S. Clinton Street
Syracuse, NY 13261-7198
Attorney for Respondent

**Norman A. Mordue, Chief, United States District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    Background[1]**

In a Superceding Indictment returned on October 1, 2003 by a grand jury sitting in the

Northern District of New York, petitioner *pro se* Angel Vega and others were charged with

committing narcotics violations, contrary to 21 U.S.C. § 841A.  *See* 03-CR-0228, Dkt. No. 286.

---

[1] The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, *Vega v. United States*, 5:06-CV-0189 ("06-CV-0189"), as well as the file of the related criminal matter, *United States v. Delavega et al.*, 5:03-CR-0228 (N.D.N.Y.) ("03-CR-0228").

Thereafter, following negotiations between Vega's counsel and the Office of the United States Attorney for the Northern District of New York, Vega agreed to plead guilty to the first count in the Superceding Indictment in full satisfaction of all charges brought against him in that accusatory instrument. *See* 03-CR-0228, Dkt. Nos. 548, 549. On February 2, 2005, this Court sentenced Vega to a term of imprisonment of twenty four months, to be followed by a three year term of supervised release. *See* 03-CR-0228, Dkt. No. 606.

Vega was thereafter charged with violating the terms of his supervised release, 03-CR-0228, Dkt. No. 624, and on September 14, 2005, following his guilty plea to the alleged violations, this Court directed that Vega be imprisoned for a total of twelve additional months, and further ordered that, after completing that term of imprisonment, Vega would not be subjected to any additional period of supervised release. *See* 03-CR-0228, Dkt. Nos. 625, 627.

On February 13, 2006, Vega filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255. 06-CV-0189, Dkt. No. 1. In his pleading, Vega challenges the length of the twelve month prison term imposed on him by this Court after he pleaded guilty to violating the terms of his supervised release. *Id.* On March 16, 2006, the United States Attorney, acting on respondent's behalf, filed a letter brief in opposition to Vega's application. *See* 06-CV-0189, Dkt. No. 3.

## II.  Discussion

According to the website maintained by the Federal Bureau of Prisons ("BOP"), on September 12, 2006, Vega was released from the custody of the BOP. *See* http://www.bop.gov/iloc2/InmateFinderServlet? Transaction= NameSearch&needingMoreList= false&LastName=Vega&Middle =&FirstName=Angel&Race=U&Sex=U&Age=&x=329&y=282.

Article III, Section 2 of the United States Constitution limits the subject matter of the

federal courts to actions that present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). As the *Spencer* Court noted, where the federal action no longer presents a case or controversy, the action is moot and the court no longer retains subject matter jurisdiction over the proceeding. *Spencer*, 523 U.S. at 7; *see also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 51 (2d Cir. 2004) ("[a] case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III, Section 2 of the Constitution") (citing *Spencer*); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). This case or controversy requirement: "'subsists through all stages of federal judicial proceedings.... [I]t is not enough that a dispute was very much alive when the suit was filed.'" *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, ___ U.S. ___, ___, 127 S.Ct. 2652, 2662 (2007) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). Thus, when the issues presented by a party in an action are no longer "live," the federal action is properly dismissed as moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotations and citations omitted).[2]

The case-or-controversy requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a conviction because the incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7; *see also Bourdon v. Walker*, 453 F.Supp.2d 594, 599-600

---

[2] Although the respondent has not argued that this action is moot, this Court notes that when a case becomes moot, the federal court is deprived of subject matter jurisdiction over the action. *See Spencer*, 523 U.S. at 7; *Fox v. Board of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation and citation omitted). Federal courts must consider *sua sponte* matters that touch upon the court's subject matter jurisdiction. *Krimstock v. Kelly*, 306 F.3d 40, 70 n.34 (2d Cir. 2002) ("whether the claims of some plaintiffs have been rendered moot ... is a question that a court must address *sua sponte*"); *see also United States v. Williams*, 475 F.3d 468, 479 (courts "'have the obligation to consider whether this action is moot'") (quoting *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999)). As the Supreme Court re-iterated in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), "'subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived.'" *See Arbaugh*, 546 U.S. at 514 (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

(N.D.N.Y. 2006) (McCurn, J.) (citing *Spencer*) (other citation omitted).  Moreover, a habeas petition challenging a criminal conviction is not necessarily rendered moot when the petitioner is released from prison because collateral consequences of that conviction survive an inmate's release.[3]  *See*, *e.g.*, *Spencer*, 523 U.S. at 12 ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)).

In the present action, however, Vega is not challenging the validity of his conviction or the sentence imposed on him following that conviction but rather the sentence he received following the determination that he had violated the terms of his supervised release.  *See* Motion to Vacate, Grounds One through Three.  As noted above, he has since been discharged from prison after he fully completed such sentence.

In *Spencer*, the Supreme Court considered the issue of when a habeas petition which challenges the findings of a parole revocation proceeding becomes moot.  The petitioner in *Spencer* had challenged the wrongful termination of his parole status, however while that action was pending, his prison term expired.  *Spencer*, 523 U.S. at 6.  In considering whether the petition was moot, the *Spencer* Court noted: "[t]he reincarceration that he incurred as a result of [the revocation of his parole] is now over, and cannot be undone.  Subsistence of the suit requires, therefore, that continuing 'collateral consequences' of the parole revocation be either proved or presumed."  *Id.* at 8.  Since the petitioner in *Spencer* was unable to establish any collateral

---

[3] Examples of such collateral consequences include the inability to serve as a juror, engage in certain businesses, or vote.  *E.g.*, *Johnson v. Levine*, 00Civ.8402, 2001 WL 282719, at *1 (S.D.N.Y. Mar. 21, 2001).

consequences relating to the decision to revoke his parole,[4] the Supreme Court affirmed the judgment of the Eighth Circuit Court of Appeals which had dismissed petitioner's case as moot. *Spencer*, 523 U.S. at 18; *see also Williams*, 475 F.3d at 479.

In *United States v. Probber*, 170 F.3d 345 (2d Cir.1999), the Second Circuit extended the Supreme Court's holding in *Spencer* and held that federal courts cannot properly presume collateral consequences where a party challenging the revocation of his or her supervised release has fully served the term of re-imprisonment challenged by the petition. *See Probber*, 170 F.3d at 347-49 (dismissing as moot appellant's challenge to revocation of supervised release).

In the case *sub judice*, when Vega was discharged from prison in September, 2006, he had fully served the challenged prison sentence, and was also not subject to any future term of supervised release. *E.g.*, 03-CR-0228, Dkt. No. 627. Vega "bears the burden of demonstrating collateral consequences sufficient to meet Article III's case-or-controversy requirement." *See Probber*, 170 F.3d at 348. In the present action, he has not demonstrated that he will suffer any collateral consequences due to the fact that he was found guilty of violating the terms of his supervised release, or because he was sentenced to a twelve month term of imprisonment following that adjudication. Nor can this Court envision any collateral consequences to which Vega may be subject as a result of the foregoing sufficient to satisfy Article III's case or controversy requirement.

Since: i) this action does not attack the underlying criminal conviction that resulted in the sentence imposed on Vega; and ii) he has fully served the term of imprisonment imposed on him as a consequence of the revocation of his supervised release, this action must be dismissed as

---

[4] The petitioner "bear[s] the burden of demonstrating some concrete and continuing injury sufficient to create an Article III case or controversy." *United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999).

moot. *E.g.*, *Spencer*, 523 U.S. at 14-18; *Probber*, 170 F.3d at 347-49; *see also Casler v. United States*, No. 5:04-CV-1157, 2005 WL 3088699 (N.D.N.Y. Nov. 17, 2005) (Mordue, J.).

### III.  Certificate of Appealability

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (B) the final order in a proceeding under section 2255.[5]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

Therefore, for the reasons stated herein, it is hereby

**ORDERED** that petitioner's Motion to Vacate is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

A Certificate of Appealability shall not be issued in this case.

**IT IS SO ORDERED.**

Date:  July 18, 2008

*[signature]*
Norman A. Mordue
Chief United States District Court Judge

---

[5] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).